This is an appeal from the judgment and order of sale of the county court of Cook county entered in the matter of the application of the county collector for delinquent taxes for the year 1930.
From the stipulation of the parties we take the following statement of facts: The county court overruled objections to the following levies: A city of Chicago bond levy which had been extended on the rate of .208 on each $100 assessed valuation; a city of Chicago school bond levy which had been extended at the rate of .24 on each $100 assessed valuation; a South Park District bond levy *Page 632 
which had been extended at a rate of .05 on each $100 valuation, and the village of Glenview general corporate purposes levy which had been extended at a rate of .2027 on each $100 assessed valuation.
On January 3, 1930, the city of Chicago passed its annual appropriation ordinance for the fiscal year 1930 and its annual levy ordinance for that year on February 4, 1930. It also passed a supplemental appropriation ordinance for the fiscal year 1930 covering appropriations for general corporate purposes on July 16, 1930, and a supplemental levy ordinance for the fiscal year 1930 on the 29th of July, 1930. The annual levy ordinance of February 4, 1930, contained tax levies for bonds, interest and loss and cost in the amount of $13,025,000, and in extending the rate for 1930 there was extended, as stipulated, for bonds and interest, loss and cost, $24,195,419.56. This included the original $13,025,000 and $406,900 principal and interest under a LaSalle street improvement bond ordinance; $42,000 principal and interest under a municipal airport bond ordinance; $608,400 principal and interest under a Western avenue improvement bond ordinance; $872,900 principal and interest-on an Ashland bond improvement ordinance, and $524,000 on an Ogden avenue improvement bond ordinance, all passed on February 26, 1930. Each of the five bond ordinances passed on February 26, 1930, covering the items last mentioned above, provided that the bonds should not be issued unless the ordinance providing therefor should be approved at an election to be called and held on April 8, 1930. A separate ordinance providing for such election was passed February 26, 1930. The election was held, a majority of the votes cast was in favor of each of the five proposed bond issues, and as to each, except as to name and amount, the ballot used was in the following form:
"Shall bonds or obligations for the purpose of providing funds for payment by the city of Chicago of special *Page 633 
assessment judgments in condemnation proceedings in the matter of opening and widening North and South Ashland avenue to the amount of $8,715,000 be issued by the city of Chicago?"
As to the levy for principal and interest of the five bond issues it is objected that since the ballot did not advise the voter that by its adoption they were levying a tax upon themselves for the year 1930 such levy in 1930 is illegal. There are additional objections that will be noted later in connection with other items of the levy.
The stipulation proceeds: On July 16, 1930, a general corporate bond ordinance in the amount of $7,000,000 was passed which provided a levy for 1930 in the sum of $2,536,690 for principal and interest. The ordinance for this bond issue was not submitted to a vote of the people. This had been authorized by an act of the General Assembly enacted and filed June 28, 1930. Also on July 16, 1930, a working cash fund bond ordinance in the amount of $12,000,000 was passed, providing for an extension in 1930 of $2,458,375. This ordinance was not submitted to a vote of the people for the same reason as the ordinance last mentioned above. (Laws of 1930, First Special Sess. pp. 18, 24, respectively.) It is objected to the items of levy under the last two ordinances mentioned, that they are appropriation ordinances, and that by statute no appropriation was authorized subsequent to the passage of the annual appropriation ordinance unless such additional appropriation was authorized by a majority vote of the voters of the municipality.
The stipulation continues: On September 22, 1930, ordinances were passed for North State street bridge bond improvements providing for extension in 1930 of $310,000, principal and interest; for South Halsted street improvement providing for extension in 1930 of $267,000, principal and interest; for traffic control signal bond ordinance providing for the extension in 1930 of $130,000, principal *Page 634 
and interest; for Indianapolis avenue improvement providing for the extension in 1930 of $39,000, principal and interest. Section 4 of each of these ordinances last mentioned provided as follows: "For the purpose of providing for the payment of the principal and interest of the bonds hereby authorized as the payments severally become due, there shall becollected a direct tax upon all the taxable property in the city of Chicago, Illinois, sufficient to produce the following sums for the following years," etc. These ordinances contained no other tax provision, and as to these four ordinances additional ordinances were adopted on December 11, 1930, and filed with the county clerk on January 6, 1931, by which the levy was made, and the fact was mentioned that through a typographical error the words "levied and" were omitted in the respective ordinances before the word "collected," in section 4 thereof. As to these four items of tax under these bond issues, respectively, it is objected that the levy was not made until December 11, 1930, and that the law required the taxes to be in the process of collection and the books in the hands of the collector on and after December 1, 1930.
It is also stipulated that on September 22, 1930, other ordinances were passed providing for an extension in 1930 of $192,000, principal and interest, for a lighting system; $96,000, principal and interest, for bridge construction; $29,000, principal and interest, for Forty-Seventh street subway; $527,000, principal and interest, for Ogden avenue improvement; $50,000, principal and interest, for playground, and $958,000, principal and interest, for public benefits. Bonds are not mentioned in connection with three of these items in the stipulation, but we assume all involve bond issues. Each of these ordinances provided in section 4 as follows: "For the purpose of providing for the payment of principal and interest hereby authorized as the payments severally become due, there shall be and there is hereby levied, and there shall be collected, a direct tax *Page 635 
upon all the taxable property of the city of Chicago sufficient to produce the following sums for the following years," etc. All of the ten bond issues last above mentioned were by ordinance of September 22, 1930, submitted to and adopted at a special election held on November 4, 1930, by a majority of the votes cast. Except for the various purposes named and the amount, the form of the ballot in each instance was:
"Shall bonds or obligations for the purpose of providing funds for the payment by the city of Chicago of the cost of construction of a bridge in North State street and approaches thereto, including the acquisition of necessary lands in connection therewith, to the amount of $3,500,000, be issued by the city council of the city of Chicago?"
Various loss and cost items are set out in the stipulation, but the matter is not argued, and therefore the objection is not considered.
It is further stipulated: On January 14, 1930, the board of education of the city of Chicago passed its annual budget for the fiscal year 1930 and filed a certificate thereof with the city council of the city of Chicago, and on February 4, 1930, the city made the annual school levy for that fiscal year which purported to contain a complete schedule based on the budget of the board of education as filed with the city council. Later, at the request of the board of education, the city made levies for bonds through a bond ordinance providing for a working cash fund in the amount of $12,000,000, and an extension in 1930 of $1,500,000 principal and $958,375 interest. The items contained in the ordinance of July 16, 1930, were not included in the annual appropriation and levy. The budget purported to cover all needs of the school system for the fiscal year, and, excepting the items of tax for free text books, school playground, public school teachers' pension and retirement fund, on February 4, 1930, the maximum rate for school purposes was fixed by law at $1.35. The county clerk extended *Page 636 
an additional .24 in excess of the $1.35 under the levy of July 16, 1930. This is objected to for the reason that it is claimed that no amount could be levied in 1930 beyond and in excess of the rate of $1.35 in force at the time of the levy of February 4, 1930, and that the act of the Fifty-sixth General Assembly effective July 1, 1930, (Laws of 1930, First Special Sess. p. 95,) was not retroactive, wherefore it was unlawful to levy for payment of principal and interest of bonds as a part of the taxes for that year.
It is agreed the South Park Commissioners passed its appropriation ordinance on August 8, 1930, for the fiscal year 1930. Thereafter it passed ordinances upon the dates and for the purposes and amounts shown in the following table, providing for the extension of installments of principal and interest in the tax levy in the year 1930, as shown in the last column of the table:

================================================================
 Date Amts. incl.
Purposes Series ordinance passed 1930 taxes
----------------------------------------------------------------
Stadium completion 2nd Dec. 17, 1930 $ 90,000
Chic. River B. O. 2nd March 9, 1931 315,000
Yates Ave. 1st July 15, 1931 54,500
S.E. Boulevard 1st July 15, 1931 54,500
Lake Front Ext. 1st Sept. 16, 1931 54,500
Paving 1st Sept. 16, 1931 8,720
Park Improvement 1st Sept. 16, 1931 54,500
Yates Ave. 2nd Sept. 16, 1931 119,900
S.E. Boulevard 2nd Sept. 16, 1931 163,000
 ----------
 $914,600
---------------------------------------------------------------

The rate extended on account of these bonds was .05 on each $100 assessed valuation. The objection to this levy is that these ordinances were passed and the levies were made for the payment of principal and interest on the bonds on and after December 17, 1930, which was not within the taxing year 1930, and that the taxing year ended November 30, 1930, for the reason that the books *Page 637 
were directed by law to be in the hands of the collector on December 1, 1930.
Finally, it is agreed that the annual levy ordinance of the village of Glenview filed with the county clerk contains two items as follows: "For payment of interest on the general indebtedness, $1612.50," and "for redemption of the principal indebtedness, $4000." It is further stipulated that the county clerk extended the rate of .2027 beyond the legal rate for general corporate purposes to produce these two items. The village clerk testified that these items were carried on the account books of the village as bonds, whereupon the village asked leave to amend the levy to show the items mentioned to be for bonded indebtedness. Under the holding in People v.Chicago, Rock Island and Pacific Railway Co. 267 Ill. go, matters of substance in a levy, if omitted, cannot be supplied by amendment. The objections to these two items were that both were for general purposes as stated in the levy, hence the excess created thereby beyond the legal rate was invalid. Evidence was introduced to show that they were carried on the books of the village as bonded indebtedness and interest on bonded indebtedness, but it was not shown that the original certificate of levy made any reference to bonded indebtedness. Nor was it shown that a certified copy of any bond issue ordinance was on file with the county clerk from which, alone, to extend the levy for these purposes. These objections should have been sustained, and the court erred in permitting the amendment to be made as to each of these items.
As to the objection first noted with reference to the form of the ballot used in voting upon the question of the issuance of bonds under the first five ordinances mentioned, the ballot was in substantial compliance with the form prescribed by the statute, and it was not necessary that it mention the matter of the 1930 levy for principal and interest. When a majority of the voters approved *Page 638 
these bond issues by their vote they authorized the levy of 1930 and succeeding years contained in the ordinance. What we have said here applies to the same objection to various other bond issues.
The next objection noted above is to the $7,000,000 corporate bond issue, the $12,000,000 working cash fund bond issue for the city, and the like fund for the Chicago city schools. The three ordinances were appropriation ordinances and the bonds were issued without a vote of the people first having been had at a special election or otherwise, as was required before the amendment to the law made by an act passed at the first special session of the Fifty-sixth General Assembly and filed on June 28, 1930. (Laws of 1930, p. 18.) This amendment created an exception to the statute requiring the submission of the bond ordinance to the voters by exempting from the requirement, among other exceptions: "In cities of more than 200,000 population, bonds to pay indebtedness incurred or to be incurred by any such city payable out of funds provided for general corporate purposes, which bonds shall mature within fifteen years from the date thereof, provided, however, that the aggregate principal amount of such bonds to pay such indebtedness that may ever be issued without being authorized at an election shall not exceed $7,000,000.00." Also at the same session of the General Assembly, (Laws of 1930, p. 24,) by an act filed June 28, 1930, in force July 1, 1930, it was similarly provided that the $12,000,000 working cash fund bonds of the city of Chicago might be issued without submission to the voters for approval. The same special session of the legislature amended the School act by adding what is known as section 134 1/2 (Laws of 1930, p. 98,) by which a similar provision was made as to the $12,000,000 bond issue for a working cash fund for the Chicago city schools. Under the self-executing provision with reference to bond issues contained in section 12 of article 9 of the constitution of *Page 639 
Illinois, and in view of what we said in People v. St. Louis,Alton and Terre Haute Railroad Co. 300 Ill. 519, with reference to the detention home tax of St. Clair county, which was there under consideration, the objections were properly overruled as to these bond issues. The legislature by the enactment of the enabling legislation gave the city power to make the appropriations and to levy a tax in each instance in the year 1930 as a part of the levy for that year.
As to the objection to the four bond ordinances of the city passed September 22, 1930, approved by the voters November 4, 1930, and severally amended by levy ordinances on December 11, 1930, and certified to the county clerk on January 6, 1931, under the holding in People v. Payne, 296 Ill. 483, the levy for the year 1930 is invalid for the reason that it was not made before the law required the tax books to be completed and in the hands of the county collector. Since the levies were made before the bonds were sold and the indebtedness incurred this does not invalidate the bonds. This is true, also, as to the objection to the levies made by the South Park Commissioners under bond ordinances set out in the table contained in the statement of facts herein, the first of which ordinances was passed on December 17, 1930, and therefore beyond the tax year.
The objection to the additional rate of .24 for working cash fund bonds of the Chicago city schools that it exceeded the maximum school rate is not tenable. By the act giving power to the city to issue such bonds it was provided: "Such tax shall be levied and collected in like manner with the other taxes of such school district and shall be in addition to and exclusive of the maximum of all other taxes which such board of education or such city council is now, or may hereafter be, authorized by law to levy for any and all school purposes," etc. Laws of 1930, First Special Sess. p. 99. *Page 640 
As to the contention that the above acts of the legislature were not made retroactive by their terms, it is sufficient to say that they were passed and became effective well within the taxing year and before the levy was made, the authority for which they respectively created. This does not involve the same question as discussed in the cases cited by the appellant where efforts were made to validate taxes illegally levied by a curative act of the legislature.
As to the general contention that no appropriation could be made or tax levied for the year after the passage of the annual appropriation ordinance, we refer again to People v. St. Louis,Alton and Terre Haute Railroad Co. supra. We said in People v.Day, 277 Ill. 543, in discussing seven ordinances authorizing seven bond issues which were passed on March 1, 1915, after the annual appropriation ordinance had already been passed on January 18, 1915: "The necessities for these levies arose after the adoption of the annual appropriation bill on January 18, 1915. These levies by the city were of the same character as those by the county and were valid."
The action of the county court in overruling the objections is affirmed except as to the objections to the items in the village of Glenview levy; the items in the South Park Commissioners' levy; the levies for 1930 in connection with the ordinances of September 22, 1930, as follows: Bond issue ordinances for North State street bridge bond improvement; for South Halsted street improvement; traffic control signal bond ordinance, and Indianapolis avenue improvement, as to which objections its rulings were erroneous. The judgment of the county court is affirmed in all other particulars but reversed as to the objections last mentioned, and the cause is remanded to the county court of Cook county, with directions to sustain those objections.
Affirmed in part and reversed in part. *Page 641