(No. 22771.—

THE PEOPLE *ex rel.* Thomas D. Nash, County Collector, Appellee, *vs.* S. A. MAXWELL & Co. Appellant.

*Opinion filed February 21, 1935—Rehearing denied April 5, 1935.*

ADELBERT BROWN, (ALTHEIMER, MAYER, WOODS & SMITH, GARDNER, FOOTE, MORROW & MERRICK, McDON-ALD & RICHMOND, PETIT, OLIN & OVERMYER, HOUSTIN SHOCKEY, CUTTING, MOORE & SIDLEY, DEFREES, BUCKING-HAM, JONES & HOFFMAN, DENEEN, HEALY & LEE, DONALD I. GRAHAM, ROBERT N. HOLT, MACCHESNEY, WHITEFORD & WELLS, MAYER, MEYER, AUSTRIAN & PLATT, PEABODY, WESTBROOK, WATSON & STEPHENSON, RYAN, CONDON & LIVINGSTON, C. LYSLE SMITH, TENNEY, HARDING, SHER-MAN & ROGERS, SYDNEY WOLFE, and STEARNS & JONES, of counsel,) for appellant.

THOMAS J. COURTNEY, State's Attorney, (HAYDEN N. BELL, JACOB SHAMBERG, and MANUEL E. COWEN, of counsel,) for appellee.

Mr. JUSTICE FARTHING delivered the opinion of the court:

In the proceedings instituted in the county court of Cook county by the county treasurer (*ex-officio* county collector) for judgment and order of sale of real estate for delinquent taxes for 1931, appellant, S. A. Maxwell & Co., filed objections to the taxes levied for that year for the city of Chicago corporate purposes fund, the city of Chicago board of education free text-book fund, and to the total rate for all taxing districts. Its objections were overruled, and this appeal followed.

The fiscal year of the city of Chicago is co-extensive with the calendar year. The 1931 appropriation ordinance was passed on February 9 of that year, and it appropriated $67,556,157.02 for the corporate purposes fund. The part of this amount that had to be raised by an *ad valorem* tax was determined by taking into consideration the estimated income from other sources and the surplus assets available for appropriation for the year 1931. It was stipulated that the proceedings of the city council of January 21, 1931, show that the estimated surplus available for appropriation

in 1931 was $1,134,196.47. They show that this figure was obtained by considering as assets the cash on hand, the net taxes receivable from the 1928, 1929 and 1930 levies, accounts receivable, accumulated interest and investments in capital account, and from them the liabilities were deducted. The income from sources other than *ad valorem* taxes was estimated by the city council at $16,412,150. This estimate, taken with that of $1,134,196.47, left $50,009,810.55 to be raised by *ad valorem* taxes in order to meet the appropriation. The maximum rate of $1.37 for corporate purposes was extended on a total assessed valuation stipulated to be $3,147,614,842 for the city of Chicago. The amount produced was $43,122,323.33 instead of the estimated $50,009,810.55.

Appellant's main objection was that the city council in estimating the amount of surplus available for appropriation in 1931 in the corporate fund failed to include an item of $28,950,175.48, which represented uncollected taxes for the years 1901 to 1927, both inclusive. This amount was net, after deducting ten per cent for loss and cost of collection. This item for uncollected taxes appeared in the comptroller's report of January 1, 1931, as contingent assets, and appellant asserts that if this item had been included, as it says the city council was bound to do under the statute hereafter referred to, the amount of *ad valorem* taxes could have been raised by a rate of $.615 instead of the maximum of $1.37. It therefore insists that the rate in excess of $.615 is illegal and void.

Similarly with reference to the tax of $.04 per $100 of assessed valuation for the free text-book fund, appellant contends that if the surplus on hand had been taken into consideration no levy whatever would have been necessary. It contends that under similar statutes the city council was required to list as an item of available surplus in the appropriation ordinance all uncollected taxes for previous years after making only such deductions as are al-

lowed by these statutes. Appellant says that the report of the board of education of the city of Chicago showed a surplus of $1,671,174.12, and since only $1,457,267 was appropriated no levy was necessary for 1931. This report included uncollected taxes from prior years. It is conceded by appellant that both objections are governed by the same principles.

Appellant says that section 189⅜ of the School law, (Smith's Stat. 1933, p. 2657; Cahill's Stat. 1933, p. 2553;) which permits a maximum levy of $.04 for free text books, is further limited by section 135½ of that statute, which provides that the amount of the levy shall be reduced by the surplus on hand. The provisions of these sections are similar to those which govern the appropriation for the corporate fund and need not be quoted here.

Appellant's contention is that by section 2a of article 7 of "An act to provide for the incorporation of cities and villages," approved April 10, 1872, as amended, (Laws of 1930, Sp. Sess. p. 8; Smith's Stat. 1931, chap. 24, sec. 102, p. 361; Cahill's Stat. 1931, chap. 24, par. 93, p. 345;) it is mandatory that the city council include all uncollected taxes of previous years as available surplus assets, and that only the deductions allowed therein may be made. Section 2a, after providing that cities of 150,000 or more inhabitants shall pass an appropriation ordinance within the first quarter of each fiscal year, continues: "For the year 1931 and each year thereafter, such ordinance shall set forth estimates, by classes, of all current assets and liabilities of each fund of such city or village, as of the beginning of such fiscal year, and the amounts of such assets available for appropriation in such year, either for expenditures or charges to be made or incurred during such year or for liabilities unpaid at the beginning thereof. Estimates of taxes to be received from the levies of prior years shall be net, after deducting amounts estimated to be sufficient to cover the loss and cost of collecting such taxes, and

also deferred collections thereof and abatements in the amount of such taxes extended or to be extended upon the collector's books." By section 1 of article 8 of the same act (Smith's Stat. 1933, p. 361; Cahill's Stat. 1933, p. 337;) the aggregate amount of taxes to be levied for any one year for general corporate purposes is made subject to the further limitation that it shall not exceed the estimated amount of taxes to be levied for such year as determined in accordance with the provisions of section 2a of article 7. In other words, a city cannot levy the maximum rate when its estimated needs will be satisfied with a smaller rate.

In support of its objections appellant introduced in evidence two auditors' reports which were prepared from the books of the comptroller after his report of January 1, 1931, had been made. The first report was made after the 1929 tax levy had been extended, and included the actual levy for that year and an estimate of the 1930 taxes. The second was made after the 1930 taxes had been extended and included the actual levies instead of estimates. Both exhibits showed a surplus of assets over liabilities well in excess of $30,000,000. Appellant also introduced the testimony of a deputy county clerk who had charge of the books and records with reference to the extension of taxes, to the effect that a search of the records of his office disclosed no abatement and no deferring of tax levies either in the corporate fund or free text-book fund. His testimony was elicited over the objection that abatements might occur and knowledge of them might not reach the county clerk, and that this witness' testimony was, therefore, immaterial. But appellant did not introduce testimony tending in any way to show what, if anything, could be collected out of the taxes for 1901 to 1927, which were estimated at a net amount of $28,950,175.48, or the years 1929 and 1930, the taxes for both of which were unextended at the time the appropriation ordinance of 1931 was passed.

Appellant in its brief argues that the surplus which is shown by the auditors' reports had accumulated by reason of curtailment of municipal expenses which was necessitated by the difficulties in collecting taxes, and also by a refunding of $7,000,000 of anticipation warrants which were issued against taxes levied for the corporate purposes fund by a bond issue of that amount. There is, however, no evidence in the record to show that a surplus existed in fact. The bond issue ordinance is set out in the evidence, but it does not show which, if any, anticipation warrants were paid or exchanged for the bonds. The record is also silent as to the curtailment of expenditures. Appellant argues that a large part of the unpaid taxes for the years 1901 to 1927 consisted of taxes for the last year. It says that it is a matter of common knowledge that a tax strike was then on, and that there was delay and confusion because of the 1928 re-assessment. All of this could be true and still not furnish proof that the $28,950,175.48 uncollected taxes for those years were collectible.

Appellant says that the annual report of the comptroller, made at the first of the fiscal year, is binding upon the city council as to whatever estimated surplus is there shown. It urges that since this report is displayed to show the condition of the city's credit, the tax-payers should have the benefit of the surplus shown by the report, and that this surplus should be deducted from the amount to be levied to meet appropriations. The comptroller is required to make an annual report to the city council, but there is nothing in the statute requiring the city council to accept at their full face value the figures shown in his report in estimating the surplus on hand available for appropriation.

The facts shown by this record fail to establish any breach of duty on the part of the city council in the passage of the 1931 appropriation ordinance as to both funds. Section 2a, relied upon by appellant, does not impose a rule of law by which the surplus assets are to be deter-

mined different from that which governed taxing bodies prior to January 1, 1931. Available cash and other surplus assets then, as now, had to be credited against and deducted from the amount to be levied. This section of the statute does not give value to uncollected taxes levied for previous years and make them available as if they were surplus cash assets, by reason, merely, of their existence on the books of the taxing body. It is the duty of the objector who assails the validity of a tax to show its invalidity. The presumption is that taxes have been legally levied. (*People* v. *Mills Novelty Co.* 357 Ill. 285, 293; *People* v. *New York Central Railroad Co.* 355 id. 80, 90.) While in the *Mills Novelty Co. case* it is true that the statute here relied upon by appellant was not involved and taxes for 1931 were not under consideration, we can apply here what we said with reference to requiring proof to be made by the objector that there were solvent credits from prior levies out of which to pay unliquidated liabilities for which a new appropriation had been made. And the same is true as to the *New York Central case.* In it the bond issue had been made to discharge a deficit in uncollected taxes previously levied to pay various other bond issues. After the new bond issue tax levy, collections were made from the original levy of 1927, and these were applied to reduce the tax which was then extended for the balance remaining unpaid. The objector did not show that still further collections could be made from the 1927 levy, and for that failure of proof we held that the tax-payer's objection should have been overruled.

As to the objections to the corporate fund and to the free text-book fund, to entitle the tax-payer to a reduction by reason of uncollected taxes for all previous years it would have to prove what, if anything, could be collected from such taxes. In the absence of a contrary showing we must presume that the city council did not consider these uncollected taxes as assets which could be realized

upon. They may have been considered in the nature of bad debts, and for that reason would not be available for appropriation in 1931. The *Mills Novelty Co.* and the *New York Central* decisions above referred to place the duty upon the objector to show that the uncollected credits are solvent. This rule is applicable here.

Appellant's last contention is that the trial court erred in overruling its objection to the total tax rate of $7.35 for the benefit of all taxing districts. It says that the maximum rate allowable under section 2 of "An act concerning the levy and extension of taxes," known as the "Juul law," was $6.15. (Smith's Stat. 1933, chap. 120, par. 330; Cahill's Stat. 1933, chap. 120, par. 362.) That section provides, briefly, that the county clerk in counties of over 200,000 population shall ascertain the rates per cent required to be extended; provided, however, that if the aggregate of all taxes, exclusive of certain taxes which are enumerated, certified to be extended against any property in any part of any taxing district or municipality shall exceed one per cent of the assessed valuation thereof, the rate shall be reduced, except for those enumerated taxes, so as to reduce it to one per cent of the assessed value of the taxable property; provided further, that in reducing the tax levies hereunder the rate per cent for city purposes, other than the exceptions named, shall not be reduced below $1.37 for 1931.

Appellant's position is that the primary intention of the legislature was to fix a maximum over-all rate of one per cent, above which the tax rate could not be raised, and that the second proviso mentioned above is subservient to that purpose. Appellant says the question has not before been presented to us for determination and no cases are cited on the point by the parties. It is contended that the rule is applicable that provisos cannot be permitted to enlarge the scope of a statute but can only restrict the general purpose of the act. Appellant cites *Cummings* v. *Peo-*

*ple,* 211 Ill. 392. It is also urged that the provisions of taxing statutes must be more strongly construed against the taxing body and in favor of the tax-payer. (*Majestic Household Utilities Corp.* v. *Stratton,* 353 Ill. 86.) Appellant says that the main purpose of this act was to fix the limit, generally, at one per cent of the assessed valuation of the property to be taxed. By this it assumes that the portion of this section which provides for a one per cent limitation is the general purpose and scope of the act, and that the portion which provides for fixed minimum rates for the various municipal corporate funds is a proviso to the former portion. As a matter of fact both are provisos. Most of the frequent amendments have been of the maximum rates included in the second proviso, and such amendments have ordinarily increased these rates in order to provide greater revenues to meet changed conditions. We recognized that these were both provisos in *Booth* v. *Opel,* 244 Ill. 317. The question was whether the act was local, and therefore unconstitutional, and did not concern any supposed inconsistency in the two provisos themselves. But since they are provisos the inquiry is not as to whether they are inconsistent, but whether the second proviso is inconsistent with the general purpose of the section or act. That purpose is to levy and extend taxes and to fix the rate. There is no inconsistency between that purpose and the second proviso, hence appellant's contention that one or the other of the two provisos must fall is not well taken. The provisos, when considered as they should be, are not in conflict.

For the reasons indicated, the judgment of the county court of Cook county is affirmed. *Judgment affirmed.*