(No. 22888.—

THE PEOPLE *ex rel.* I. J. Hudson, County Collector, Appellee, *vs.* THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY, Appellant.

*Opinion filed April 17, 1935.*

DEWEY & CUMMINS, (SAMUEL W. BAXTER, of counsel,) for appellant.

JOSEPH O'SULLIVAN, State's Attorney, and CHARLES L. RICE, for appellee.

Mr. JUSTICE HERRICK delivered the opinion of the court:

The county court of Pulaski county overruled the objections of the objector, the Cleveland, Cincinnati, Chicago and St. Louis Railway Company, to the application of the county collector of that county for judgment for a delinquent tax for 1933, designated in the record as the additional county tax as to twenty-five cents on the $100 valuation, and entered judgment and order of sale therefor. The county tax and the additional county tax were each extended at the rate of thirty-two cents and the county highway tax at the rate of sixteen cents on the $100 valuation. The county court sustained the objector's objections to seven cents of the rate both for the county tax and the additional county tax, being the excess above the twenty-five cent rate in each instance, and also sustained the objection to three and one-half cents (the excess over the statutory rate of twelve and one-half cents of the county highway tax) and entered judgment and order of sale for the taxes as so reduced. The objector deposited with the county collector the amount of the additional county tax extended at the twenty-five cent rate and costs and has perfected this appeal, as provided by the statute, from the judgment for the additional county tax.

The collector, appellee herein, filed with the notice of appearance notice of a cross-appeal from the judgment sustaining the objections to the excess rates of the county tax, additional county tax and county highway tax. The ob-

jector raises the issue that the collector cannot by cross-appeal bring the record here for review of the judgments sustaining the objections to such excess tax rates. The objector takes the position that notwithstanding rule 35 of this court, adopted at the December term, 1933, the provisions covering the trial of tax objections, and appeals from judgments entered thereon, are not within the purview of the Civil Practice act but are regulated and controlled by the provisions of chapter 120, commonly referred to as the Revenue act.

Section 74 of the Civil Practice act (Smith's Stat. 1933, chap. 110, p. 2191; Cahill's Stat. 1933, p. 2159;) provides: "Every order, determination, decision, judgment or decree, rendered in any civil proceeding, if reviewable by the Supreme or Appellate Court of this State by writ of error, appeal or otherwise, shall hereafter be subject to review by notice of appeal, and such review shall be designated an appeal and shall constitute a continuation of the proceeding in the court below. Such appeal shall be deemed to present to the court all issues which heretofore have been presented by appeal and writ of error." The rules of this court prescribe the procedure for the taking of appeals under the act. Sub-section 2 of section 77 of the same act provides: "Leave to appeal shall first be obtained only where such leave is expressly required by law." No appeal bond is required unless a *supersedeas* is desired.

Section 1 of the Civil Practice act (Smith's Stat. 1933, chap. 110, p. 2182; Cahill's Stat. 1933, p. 2150;) is as follows: "The provisions of this act shall apply to all civil proceedings, both at law and in equity, unless their application is otherwise herein expressly limited, in courts of record, except in attachment, ejectment, eminent domain, * * * or other actions in which the procedure is regulated by special statutes," etc. Sub-section 2 of section 31 of the same act provides: "Proceedings in attachment, ejectment, eminent domain, * * * or other actions in

which the procedure is regulated by special statutes, shall be in accordance with the statutes dealing therewith."

Rule 2 of this court is: "In the actions referred to by section 1 and sub-section 2 of section 31 of the Civil Practice act, the separate statutes shall control to the extent to which they regulate procedure in such actions, but the Civil Practice act shall apply to matters of procedure not so regulated by separate statutes."

Section 191 of the Revenue act (Smith's Stat. 1933, chap. 120, p. 2387; Cahill's Stat. 1933, p. 2337;) provides, in substance, that on application for judgment and order of sale for property for delinquent taxes the court shall examine the county collector's list of delinquent property, "and if defense (specifying, in writing, the particular cause of objection) be offered by any person interested * * * the court shall hear and determine the matter in a summary manner, without pleadings." Section 192 of the same act provides that appeals from the judgment of the county court may be taken to the Supreme Court within thirty days from the rendition of the judgment, on the party praying an appeal executing a bond to the people, with two or more sureties to be approved by the court, in some reasonable amount to be fixed by the court, conditioned that the appellant will prosecute his appeal with effect and will pay the amount of the tax in litigation, with costs, with the further proviso that no appeal shall be allowed from any such judgment, nor any writ of error to review the judgment shall operate as a *supersedeas* unless the party praying the appeal or desiring the writ of error shall, before taking the appeal or suing out such writ of error, deposit with the county collector an amount of money equal to the amount of the judgment and costs. There are further provisions in this section for the entry of judgment in this court, with a penalty of not to exceed ten per cent in the event the judgment is affirmed, and a provision for ordering the county collector to credit the judgment with the

amount deposited with him and awarding an execution for the deficiency, if any, with the costs. Writs of error as applied to civil cases are not recognized by the Civil Practice act except where statutory provision is made therefor. (Cahill's Stat. 1933, chap. 110, sec. 74, p. 2159; Smith's Stat. 1933, p. 2191.) It is apparent that section 192 relates to appeals by the property owners. The Civil Practice act specifically excludes from its provisions those proceedings in which the practice is regulated by special statutes. Rule 2 of this court relates only to the practice in proceedings coming expressly within the terms of the Civil Practice act and not to statutory proceedings wherein a designated practice is prescribed. The procedure to enforce the payment of taxes against real and personal property is definitely prescribed by the Revenue act. An appeal can not be taken by the property owner from an order of sale against his property until he has deposited the tax that is in litigation. Neither can he obtain a *supersedeas* on a writ of error without likewise depositing the tax.

The proceeding is clearly within the exception of the Civil Practice act and rule 2 of this court. The rule is, that in hearings on tax objections the judgment as to the different items involved is a distinct judgment as to each of such items. (*People* v. *Baltimore and Ohio Railroad Co.* 319 Ill. 366; *People* v. *Chicago and Eastern Illinois Railway Co.* 310 id. 257; *People* v. *Chicago and Alton Railway Co.* 289 id. 282.) The items of the county tax and the county highway tax are distinct and separate items of tax from the additional county tax. The appeal brought here by the objector involves only the issue as to the correctness of the judgment entered by the trial court against the objector for the additional county tax. The ruling of the trial court as to the items of the county tax and the county highway tax cannot be presented for review here by the purported cross-appeal taken by the collector. In order to review the judgments on those items a separate appeal

should have been prosecuted by the collector. However, the record involving the additional county tax being here, the collector may properly assign cross-errors on the ruling of the trial court denying judgment for the excess rate of seven cents of the additional county tax and by cross-errors have such ruling reviewed.

The board of county commissioners on August 29, 1932, adopted a resolution calling for an election on the proposition of levying an additional tax of twenty-five cents on the $100 assessed valuation. The preamble of the resolution recited that the necessary and actual running expenses of the county, exclusive of the amount necessary for the improvement and maintenance of roads, was found by the board to exceed $38,000 and that the total assessed valuation of the property in the county was $6,974,534, and it was only possible to raise on said amount for county purposes by a twenty-five cent levy on the $100 valuation, $17,436. The resolution proceeded to recite that it was necessary that an additional county tax of twenty-five cents on the $100 assessed valuation be levied in addition to the statutory and constitutional limitation in order to pay blind pensions, mothers' pensions, constructing and repairing of bridges and approaches on the county line, and to pay other legal obligations of the county. The resolution directed the county clerk to give the proper notice "that the question of levying an additional tax of twenty-five cents on each $100 of the assessed valuation of said county, said tax to be in addition to the statutory and constitutional limitation and to be levied for a period of five years," would be submitted to the voters at the general election of November 8, 1932. The several amounts required for the specific needs mentioned in the resolution were not shown, excepting $4500 for "blind pensions." The notice of the election included a copy of the official ballot to be used at the election. The notice stated that the tax was in addition ·to all county taxes and in addition to the statutory and constitutional

limitation and was to be levied annually for five years, the money derived from the tax "to be used for the purpose of paying the blind pensions, and widows' or mothers' pensions, constructing and repairing necessary bridges and approaches, as provided by law."

The official ballot used, as contained in the notice of the election, was as follows:

OFFICIAL BALLOT

| | | |
|---|---|---|
| Shall the Board of County Commissioners of Pulaski County, Illinois, levy an additional tax of twenty-five cents on One Hundred Dollars assessed valuation annually for a period of five years, said tax to be in addition to all other county taxes, and in addition to the Statutory and Constitutional Limitation, the money to be used in paying blind pensions, widows' and mothers' pensions, constructing and repairing bridges, according to the statute in such case made and provided. | YES | |
| | NO | |

A canvass of the ballots showed the affirmative of the proposition carried. The county commissioners on October 13, 1933, levied a tax of $37,125.50 as a county tax for the year 1933, and a further sum of $8760.50 as a county tax for the period of three months covering the period from September 1, 1934, and ending December 1, 1934. The levy stated the total amount levied to be $41,886 to be extended for the year 1933 and an additional three months' period from September 1 to December 1, 1934. The only appropriation for road purposes was for the purpose of improving, maintaining and repairing the county highways known as State aid roads for a period from September 1, 1933, to September 1, 1934, $9750, and from September 1, 1934, to December 1, 1934, $3250. No ap-

propriation was made for blind pensions, mothers' pensions, widows' pensions or the repairing and constructing of necessary bridges and approaches on the county line. The county tax rate as extended was as follows: County tax, thirty-two cents, mothers' pension fund three cents, additional county tax thirty-two cents, county highway tax sixteen cents, making a total county tax rate of eighty-three cents on the $100 assessed valuation. The mothers' pension fund should have been included in the county tax. *People* v. *Baltimore and Ohio Southwestern Railroad Co.* 359 Ill. 301.

A county tax levied annually for general county purposes without a vote of the people, in counties of less than 135,000 population, is limited to twenty-five cents on the $100 assessed valuation. (Smith's Stat. 1933, chap. 34, sec. 25, sub-div. 6, p. 844; Cahill's Stat. 1933, p. 840.) The constitutional limitation on county taxes without a vote of the people is seventy-five cents on a $100 valuation, excepting liabilities existing at the time of the adoption of the constitution. (Const. 1870, art. 9, sec. 8; *People* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 295 Ill. 214.) A favorable vote on the proposition to levy a tax in addition to the general county tax authorized by the statute, if it had been submitted in proper form to the electors, was not the levy of such tax. The additional tax must be levied by the county commissioners. (*People* v. *Chicago, Milwaukee and St. Paul Railway Co.* 310 Ill. 508.) A county has no powers except those expressly granted by the statute and such powers as are necessarily incidental to carry out the granted powers, (*People* v. *Wabash Railway Co.* 349 Ill. 93; *LeFevre* v. *County of Lee,* 353 id. 30; *Stevens* v. *Henry County,* 218 id. 468; *Perry* v. *Kinnear,* 42 id. 160;) and in determining the meaning of a grant of power to levy taxes strict construction will be given to that which is relied upon to confer the power but the construction will be liberal in all that tends to protect

the tax-payer. *People* v. *Mills Novelty Co.* 357 Ill. 285; *People* v. *Wabash Railway Co. supra; People* v. *Public Service Co.* 328 Ill. 440; *Peoria and Pekin Union Railway Co.* v. *People,* 198 id. 318.

There are several legal reasons why the levy against the objector's property cannot be sustained. The authority to levy a tax in excess of the twenty-five cent rate is found in sections 27 and 27½ of the statute in relation to counties. (Cahill's Stat. 1933, chap. 34, pp. 842, 843; Smith's Stat. 1933, p. 846.) Each section requires the county board, or county commissioners in the event they deem it necessary to assess taxes in excess of the twenty-five cent rate, to enter an order of record setting forth substantially the amount of the excess, the purpose for which and the number of years required. This provision manifestly contemplates that the county commissioners shall determine, at least approximately, the amount of money and for what purpose required, as a basis upon which to found and determine the tax rate in excess of the twenty-five cent rate. Unless the amount needed was determined by the commissioners in advance of requiring an election to be called there would be no possible way of knowing with any degree of certainty what additional tax rate should be voted on and thereafter levied in the event of a favorable vote. The tax-payer is entitled to be informed by the order entered by the board for what purpose the amount of tax to be raised by the additional rate will be applied, so that he may exercise his judgment as to whether the additional tax is required for the welfare of the county and the citizens thereof. Section 27 where the additional rate proposed to be levied does not exceed the constitutional limitation, and section 27½ where it does exceed such limitation, prescribe the form of ballot to be used at the election. The ballot set forth in the notice of the election here and used in such election was not in conformity with the statutory requirements of either section 27 or section 27½.

This court is committed to the rule that where the statute declares the form of the ballot section 16 of the Ballot law does not apply. The form of the ballot must conform to the statutory mandate, and a failure to observe such provision of the law is a matter of substance and renders the election void. (*People* v. *Myers,* 256 Ill. 529; *People* v. *LaSalle Street Bank,* 269 id. 518.) The notice of the election stated that one of the purposes for which the money to be derived from the excess tax was to be used was the "constructing and repairing necessary bridges and approaches as provided by law," while the ballot stated such purpose was "constructing and repairing bridges." The order of the county commissioners stated that one of the purposes for which the additional tax was to be used was, "to make the necessary repairs and construct the necessary bridges and approaches on the county line," thus limiting the bridge and road work to that necessary on the county line. The order of the county commissioners further recited that another purpose for which the additional tax was to be devoted was to "do other things which are necessary to be done in and about properly conducting the affairs and business of the county." The notice of election and the ballot were each silent upon this last quoted clause. The notice of election, as a purpose for requiring an additional tax, stated, among others, "the widows' or mothers' pensions," while the ballot stated as a purpose the payment of "widows' and mothers' pensions." There is no statute authorizing a county to levy a tax for widows' pensions. To what extent voters were moved by sympathy for the distressed and deserving widows of the county to vote for a levy of a tax to pay them a pension can be only a matter of conjecture. These matters stated disclosed a substantial and material variance between the resolution, notice of election and ballot, so that the election was not, in fact, held in accordance with the order of the county commissioners.

The appropriation bill passed by the county commissioners at the time they made the tax levy appropriated no sums whatever for the following purposes, stated either in their order calling the election aforesaid or in the notice of the election or on the ballot voted at the election: "Blind pension, mothers' pension, necessary repairs, and to construct the necessary bridges and approaches on the county line." The appropriation of $13,000 made for State aid roads obviously was not an appropriation for bridges and approaches on the county line. The case here made is not one where the county officials have levied a tax under the statute for which no vote of the people is required, have attempted a diversion of the tax, and a tax-payer may by injunction compel the tax collected to be devoted to the purpose for which it was levied and appropriated. The statute required that the order of the taxing authorities calling the election state the purposes for which the additional tax was to be used. Here the notice of election and the ballot particularized several of the purposes for which the additional funds were to be used. While the levy of twenty-five cents was made pursuant to the election, yet there was no appropriation for those purposes. It is apparent the additional tax was raised for purposes not specified in the notice of election and the form of the ballot voted thereat, and although we do not question the integrity of the county commissioners, yet a legal fraud was thereby perpetrated upon the voter and tax-payer in inducing him to vote a tax upon himself to be used for other and different purposes than those specified in the call for the election and the ballot there used. The case thus presented is akin to those cases where the tax was ostensibly levied for a perfectly legitimate purpose, but the real purpose of the taxing body was to accumulate a fund for a different purpose. We have held this cannot be done legally and that objections opposing judgment for such a tax should be sustained. (*Cleveland, Cincinnati, Chicago and St. Louis*

*Railway Co.* v. *People,* 208 Ill. 9; *People* v. *Illinois Central Railroad Co.* 266 id. 636.) Nor is it lawful to supplement a shortage in one fund by an excessive and unnecessary levy for another purpose. *People* v. *Illinois Central Railroad Co. supra.*

For the reasons given, the objections of the appellant to the additional county tax should have been sustained. This conclusion disposes of the cross-errors assigned as to the ruling of the county court on that tax.

The judgment of the county court of Pulaski county is reversed and the cause is remanded, with directions to that court to sustain the objections of the appellant to the additional county tax.

*Reversed and remanded, with directions.*