(No. 25572.—

THE PEOPLE *ex rel.* Fred W. Smith, County Collector, Appellee, *vs.* THE WABASH RAILWAY COMPANY *et al.* Appellants.

*Opinion filed June 14, 1940.*

L. H. STRASSER, and WILLIAMS & WILLIAMS, (BARRY MUMFORD, of counsel,) for appellants.

MERRILL H. JOHNSTON, State's Attorney, (WEAVER & JENKINS, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

By this appeal appellants seek the reversal of a judgment of the county court of Pike county overruling their

objections to county and non-high school district taxes levied for the year 1938. The cause was tried upon a stipulation of facts.

Appellant railway company was assessed for the county taxes in the amount of $3194.13, and for non-high school district taxes $5029.49. Appellants, receivers of said railway company, paid seventy-five per cent of the taxes under protest and filed objections to judgment for delinquent taxes. Its objections to the county tax were, as to all the tax, that it was not levied at the annual September meeting of the board of supervisors, or at any regularly adjourned meeting thereof. Objection was also filed to a certain item of the county tax hereinafter referred to.

Objections to the non-high school district tax were: (a) The non-high school board failed, at the time the annual tax levy was made, to file a statement of indebtedness as required by section 94(e) of the School law, (Ill. Rev. Stat. 1937, chap. 122, par. 1021;) (b) the board did not certify the amount of tax required for the purpose of paying indebtedness as required by said section 94(e); (c) the board failed to make said purported levy prior to the first Tuesday in October, 1938, and (d) the county clerk, after legally extending a tax at the rate of seventy-five cents on each $100 valuation for current purposes, without legal authority, also extended a tax designated as "Levy A" at the rate of 83 cents, and "Levy B" at the rate of 57 cents, for the purpose of paying indebtedness of said district; that said levies are void for the reason the said county clerk was and is without authority to extend any rate for non-high school purposes above the rate of seventy-five cents.

The relative facts as to the objection to the county tax are that the board of supervisors held their regular September, 1938, meeting on September 13. On that day no action was taken to levy a county tax. At the conclusion of that day's business a motion was made and seconded to

recess for further business until October 11, 1938. The record does not specifically state that a vote was taken on this motion. The supervisors' record also shows that on October 11, 1938, the board of supervisors convened at a recessed meeting. No action was taken at this meeting to levy a county tax. A motion was made and seconded that the meeting be recessed until December 12, 1938, and the records again do not specifically show that this motion was voted upon. The record also shows that on December 12, 1938, the county board again convened as an adjourned meeting of the September meeting. The record also shows that the meeting was held by virtue of a petition of more than one-third of the members of the board, filed in the office of the county clerk, requesting the calling of a meeting for December 12, 1938. At this December 12 meeting the county board levied the county tax to which objection was made, and at the conclusion of the meeting a motion was made, seconded and carried, to adjourn the September meeting.

The county board is a body corporate, has a clerk, and it is required to keep a record of the proceedings, which record is the best evidence of the acts of the board. (*People* v. *Chicago and Eastern Illinois Railway Co.* 361 Ill. 470; *People* v. *Chicago and Eastern Illinois Railway Co.* 326 id. 354; *Village of Bellwood* v. *Galt,* 321 id. 504.) The parties entered into a stipulation as to these various meetings, including the regular meeting of September 13, 1938. It is stipulated that the entries on the record of September 13 show: "There being no further business to come before this board at this time to transact and on motion of Mr. Franklin and seconded by Mr. Thurman this meeting be recessed for further business to October 11, 1938, at 10 A.M. and that the clerk is further ordered to issue orders for all bills allowed and for the usual mileage and per diem." The stipulation also reads: "It is further stipulated that said recessed meeting of said county board

held on the 11th of October, 1938, was convened as appears," etc. It is also stipulated: "It is further stipulated that said recessed meeting of October 11, 1938, was again recessed on said day as appears from volume 12 of supervisors record at page 376, by the following order." Then follows the stipulation "order" which is *verbatim* the same as the record on September 13, 1938, except the name of the member seconding the motion and date to which the recess was to be taken. It is, in this case, further stipulated "that on December 12, 1938, the recessed meeting of the county board was convened by the following order," etc. Here follows in the record of the board the statement that the adjourned meeting was held on petition of more than one-third of the members.

For the purpose of the question, here, such a petition, if there was an adjournment of the September meeting, was unnecessary, and if there was not such an adjournment the petition would avail nothing, as the meeting of December 12 was, in such case, one called after the September meeting had adjourned *sine die,* and too late to levy a tax.

Does this record show these adjournments? While not well drawn, it indicates that the meeting then in progress recessed, "On motion." This entry imports action. This fact, with the stipulation of all parties that the meetings of October 18 and December 12 were "recessed meetings," afford ample justification for the view that, for the purposes of this case, the record is sufficient to show the meetings of October 18 and December 12 to have been adjournments, and parts of the regular September meeting. The county tax levied was not illegal and the county court did not err in overruling that objection.

Appellants also object that certain items of the county tax levy were not sufficiently separated and itemized. The only item objected to is "For public grounds and buildings, repairs, up-keep and maintenance." The point is made that "public grounds and buildings" is one purpose, per-

mitting the purchase of grounds and buildings, while "repairs, up-keep and maintenance" is another purpose, relating only to preserving public grounds and buildings already owned by the county. This objection is well taken, for, under this item, the county could buy public grounds or erect buildings, which is a different purpose from up-keep, and the tax therefor should be separated from one for repair and maintenance. (*People* v. *Alton and Eastern Railroad Co.* 359 Ill. 440.) The county court erred in overruling this objection to the county tax.

The facts concerning the non-high school district tax are that on September 22, 1938, the non-high school board levied a tax of $50,000 in proper form against non-high school territory and a proper certificate of levy was filed. The county clerk, by virtue thereof, extended a tax at the rate of seventy-five cents on each $100 valuation. That rate had, prior thereto, been authorized by a vote of the people. At the time of the last mentioned levy the non-high school district was indebted on account of old tuition claims, dating back to 1926, in excess of $83,000, during which time two changes had been made in the boundaries of the non-high school district. November 19, 1938, several high school districts in Pike county, to which the non-high school district was indebted, filed a petition for a writ of *mandamus* against the board of education of the non-high school district, alleging the indebtedness due, the changes in the boundaries of the non-high school district, and setting forth the duty of the board of said non-high school district to comply with section 94(e) of the School law. (Ill. Rev. Stat. 1937, chap. 122, par. 102e.) November 21, 1938, on motion, the petition for *mandamus* was stricken as to the county superintendent of schools and county clerk, but the motion was overruled as to the board of education of the non-high school district, and the non-high school district abiding its motion, final judgment was

rendered awarding the writ of *mandamus* requiring the board of education of the non-high school district to file a statement of indebtedness, together with changes in district boundaries, and a certificate of the county superintendent of schools as to such indebtedness, and to certify to the county clerk the amount of tax required to pay such indebtedness.

On December 1, 1938, that board filed with the county clerk a statement certified by the county superintendent of schools, showing the total unpaid indebtedness of the district was $83,538.57, and showing, by years, the indebtedness unpaid between 1926 and April 13, 1935, aggregating $50,172.17, and further showing, by years, the indebtedness between April 13, 1935, and March 12, 1938, aggregating $33,366.40; also showing the changes in the boundaries of the non-high school district which had taken place, with a map showing the original district and the boundaries after the changes, as required by statute in such case. On the same day the board certified to the county clerk the sum of $83,538.57 and filed with him a direction to extend a tax sufficient to pay said amount. As a result the county clerk, in addition to the authorized rate of seventy-five cents, extended under the levy of September 22, 1938, extended a tax designated as "Levy A," at the rate of eighty-three cents, to raise $50,172.17, and "Levy B," at the rate of fifty-seven cents, to raise $33,366.40. "Levy A" produced a tax of $2981.77, and "Levy B" $2047.72, against appellant railway company. After a hearing, the county court overruled all objections and rendered judgment against appellants for the tax.

Appellants' objection to the non-high school district tax "Levy A" eighty-three cents, and "Levy B" fifty-seven cents, is that both levies are void because the non-high school board did not file the statement of indebtedness at the time the annual tax levy of seventy-five cents was made; that the levies were not made prior to the first Monday of

October, 1938, and the county clerk is not authorized to extend any tax in excess of the rate of seventy-five cents on each $100 valuation.

School boards and boards of education derive their office, powers and duties, from the legislature, and have only such powers to levy taxes as are expressly given by the legislature. *People* v. *Wabash Railway Co.* 286 Ill. 15; *People* v. *Lake Erie and Western Railroad Co.* 248 id. 32; *Booth* v. *Opel,* 244 id. 317; *Comrs. of Highways* v. *Newell,* 80 id. 587.

Section 94 of the School law (Ill. Rev. Stat. 1937, chap. 122, par. 102,) defines the powers and duties of boards of education of a non-high school district, first, to levy a tax annually upon all the taxable property of such non-high school district, not to exceed one-half of one per cent upon the valuation to be ascertained by the last assessment for State and county purposes, for the purpose of paying the tuition of all eighth-grade graduates residing within such non-high school district, attending any two, three or four-year recognized high school: Provided, that by a vote of the people approving the same, three-fourths of one per cent may be levied. Section 94(e) (par. 102e, *supra,*) provides that if any non-high school district is indebted, or becomes indebted, the territory constituting the district when the indebtedness is incurred, shall be and remain liable for such indebtedness, even though a part of the territory may be detached and cease to be a part of such non-high school district. The board of education of the non-high school district, at the time of making its annual tax levy, shall prepare and file with the county clerk a map of the non-high school district showing its territory embraced in said district immediately prior to any change in the boundary of said district and showing the territory remaining after such change of boundary, and it shall also file a statement by the county superintendent of schools showing the amount of indebtdness of said district re-

maining unpaid, the time when such indebtedness was created, the changes in the boundary line of said district and the date of such changes. The board of education of such non-high school district shall determine and certify to the county clerk the amount of tax required for the purpose of paying such indebtedness and said county clerk shall extend a rate of tax necessary to raise the amount of said indebtedness. Said section provides for a vote of the people upon the issuance of bonds to pay such indebtedness.

Section 94(c) of the School law, (Ill. Rev. Stat. 1937, chap. 122, par. 102c, p. 2879,) provides the board of education of a non-high school district may, upon notice, issue bonds to pay indebtedness for tuition, but in case a petition is filed, within ten days of the posting and publication of the notice of issuance of bonds, signed by twenty per cent of the legal voters of the district, requesting that the proposition of issuing bonds be submitted to the voters, then no bonds shall be issued unless the proposition shall be submitted to and approved by a majority of the legal voters on the proposition. This provision of section 94(c) (par. 102c) of the statute, by its terms, expired January 1, 1938. No attempt was made to issue bonds in this case.

The power of the board of education of a non-high school district to levy taxes is statutory. The language granting that power is to be strictly construed and will not be extended beyond the plain import of the words used. (*People* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 360 Ill. 180; *People* v. *Mills Novelty Co.* 357 id. 285; *People* v. *Central Illinois Public Service Co.* 328 id. 440; *People* v. *Noyes,* 295 id. 355.) The statute fixes the maximum rate per year at fifty cents on the $100 valuation without a vote of the people, and seventy-five cents on the $100 valuation if approved by the people. In this case an earlier vote of the people had approved the seventy-five-cent rate. This latter rate was levied by the board within the time prescribed by the statute,—*i. e.,* September

22, 1938,—and the clerk extended it. The taxes produced by that levy were paid by appellants and no question is raised as to them.

The statute authorizing the creation of non-high school districts provides for the payment of indebtedness to high school districts for tuition, but makes no provision for an additional rate of taxation, above that authorized, to pay the same if it cannot be paid out of the taxes received under a levy not exceeding the authorized rate. Section 94(d) of the School law authorized the issuance of bonds before January 1, 1938, to pay that indebtedness, as hereinbefore referred to. No provision is made in the act for the increase of the tax rate authorized by the act to pay such tuition claims, without a bond issue. Were we to construe the act as appellee construes it, boards of education could, by levying a maximum tax each year and failing to pay tuitions until a large amount has accumulated, certify the indebtedness and direct the county clerk to extend it as taxes regardless of the statutory limit, thus extending the board's taxing power without limit, short of the constitutional limitation. There is nothing in the act evidencing a purpose to grant such an enormous extension of the taxing power. (*People* v. *Baltimore and Ohio Southwestern Railroad Co.* 350 Ill. 217.) While section 94(e) provides that taxes for payment of tuitions "shall be in addition to other taxes levied by such districts for current purposes," such provision does not authorize an increase in the rate above statutory limitation. *People* v. *Wabash Railway Co. supra; People* v. *Chicago, Burlington and Quincy Railroad Co.* 295 Ill. 191.

The *mandamus* writ directed the board of education to file a statement of indebtedness, together with changes in district boundaries, and a certificate of the county superintendent of schools as to such indebtedness, and to certify to the county clerk the amount of tax required to pay such indebtedness. The *mandamus* writ did not direct the

county clerk to extend that amount or any amount. In fact, the county clerk was dismissed out of the *mandamus* proceeding. His duties to extend taxes are prescribed by statute and the circuit court did not attempt to alter or add to those duties. It appears that the full statutory rate had been levied by the board for current purposes.

To hold that the county clerk was authorized or directed by the *mandamus* writ to extend taxes beyond the statutory limit of levy, would be to hold that courts may levy taxes, which they may not do. We do not construe the court's order as attempting so to do. It properly directed the board to make the required certificates, but there is nothing in section 94(c) of the School law which is to be construed as permitting the removal of the limitation on the taxing power fixed by the general provisions of section 94. That section 94(e), by necessary implication, provides, with other sections, for the issuance of bonds to pay such indebtedness, is shown by the following language of that sub-section: "Whenever a vote of the people is required upon the question of issuing bonds to pay such indebtedness, such question shall be submitted," etc. We do not have here a case where such question was submitted to a vote and authority denied by that vote. This tax was illegal, and the county court erred in overruling appellants' objections thereto.

The judgment of the county court overruling objections to the county tax except that for "public grounds and buildings, repairs, up-keep and maintenance," was right and is affirmed. Its judgment as to the above specified item in the county tax, and as to the non-high school district tax, is erroneous and is, as to those items, reversed, and the cause is remanded with directions to sustain appellants' objections thereto.

> *Affirmed in part, and reversed in part,*
> *and remanded, with directions.*