(Nos. 31760, 31761

THE PEOPLE *ex rel.* Guy O. Lunn, County Collector, Appellee, *vs.* THE CHICAGO TITLE AND TRUST COMPANY *et al.*, Appellants.

*Opinion filed May 24, 1951—Rehearing denied September 17, 1951.*

506

PETER PAUL GADDY, of Melrose Park, GEORGE J. DITCHIE and DANIEL S. WENTWORTH, both of Chicago, and J. E. BAIRSTOW, of Waukegan, for appellants.

ROBERT C. NELSON, State's Attorney of Lake County, (SIDNEY H. BLOCK, RICHARD R. BAIRSTOW, and HENRY D. FISHER, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The treasurer and *ex officio* collector of Lake County applied to the county court of that county for judgment against, and an order of sale of, all real property returned delinquent for the nonpayment of taxes for the year 1947. The Chicago Title and ·Trust Company, as trustee of certain real estate in Cuba township, and Fred W. Worth and 266 other owners of property in Warren township, having previously paid seventy-five per cent of their taxes under protest, filed objections to the application. Although substantially the same, the two sets of objections were. heard separately. Thereafter, the county court overruled all objections and entered judgments in favor of the collector. Separate appeals prosecuted by the corporate ob-

jector and the group of individual objectors have been consolidated in this court for hearing and opinion.

Of the eight objections argued upon this appeal, the first four relate to the legality of two orders of the board of review increasing the assessed value of all real property in Cuba and Warren townships, respectively, the principal objection being that the board of review had expired and was no longer lawfully in existence when the challenged orders were made. The facts are briefly as follows: the board of review convened in June, 1947, pursuant to statute, but 1947 was a quadrennial assessment year and the board did not receive the assessment books for many of the eighteen townships in the county until considerably later. For example, the township assessor of Warren township did not complete the assessment and return the books to the supervisor of assessment until September 30, 1947. On November 12, 1947, the county board of supervisors, upon the petition of the board of review, passed a resolution extending the time for the board of review to complete its work from December 7, 1947, to April 7, 1948, a period of one hundred and twenty days. The preamble to the resolution referred to the delays in receiving the assessment books, the apparent necessity of revaluing the property in several townships and the added burdens of a quadrennial assessment year as circumstances necessitating the extension.

On December 11, 1947, the board mailed notices to the township assessor and sixty property owners in Warren township, stating that it would meet December 19, 1947, to consider why the assessment of property in the township should not be increased. At the meeting held pursuant to the notices, the board made the following increases in property values: land 25 per cent, improvements on land 50 per cent, lots 100 per cent, and improvements on lots 50 per cent. On January 16, 1948, the board of review met with property owners in Cuba township, in accordance

with notices mailed January 8, 1948, and increased the assessed values of land 25 per cent, improvements on land 60 per cent, lots 60 per cent, and improvements on lots 60 per cent. Thereafter, on April 7, 1948, the board of review, having completed its revision of assessments, adjourned without day.

In support of their contention that the board of review was not legally in existence on the dates the horizontal increases were made, the objectors rely upon section 107 of the Revenue Act of 1939. (Ill. Rev. Stat. 1947, chap. 120, par. 588.) Section 107, so far as applicable, provides, "in counties of one hundred thousand or more inhabitants said board of review shall adjourn on or before the seventh day of December: provided that in the years of quadrennial assessments, with the approval of the county board, * * * the board of review in all counties of one hundred thousand or more inhabitants * * * may remain in session until not to exceed twenty (20) days after December 7th. No *per diem* compensation shall be paid any member of said board of review for services rendered after the date fixed for the final adjournment, except for services in an extraordinary session ordered by the Department in accordance with sections 140 and 144 of this Act." Lake County has more than one hundred thousand inhabitants. The proviso authorizing extensions not to exceed twenty days in quadrennial assessment years was added in 1943, (Laws of 1943, vol. 1, p. 1059,) and, manifestly, the county board here involved had no authority to extend the date of adjournment of the 1947 board of review for a period of one hundred and twenty days beyond December 7, 1947.

To sustain the validity of the assessments in question, the collector invokes two saving clauses, namely, sections 315 and 316 of the Revenue Act of 1939. (Ill. Rev. Stat. 1947, chap. 120, pars. 796 and 797.) Section 315 provides: "A failure to complete an assessment in the time

required by this Act shall not vitiate such assessment, but the same shall be as legal and valid as if completed in the time required by law." · Similarly, section 316 provides, in part: "No assessment of real or personal property or charge for taxes thereon, shall be considered illegal on account of * * * the assessments not being made or completed within the time required by law." Section 315 is a re-enactment of section 40 of the Revenue Act of 1898, (Laws of 1898, p. 34,) and has long been regarded as rendering statutory provisions establishing specific adjournment dates for boards of review directory, only. (*People ex rel. Brecheisen* v. *Board of Review,* 363 Ill. 106; *Kimball & Co.* v. *O'Connell,* 263 Ill. 232; *Barkley* v. *Dale,* 213 Ill. 614.) In the *Barkley case,* it was said: "We think, from a consideration of all of said sections, that the provision in section 38 that boards of review shall complete their work on or before the 7th day of September, annually, in view of section 40, is so far directory that the board may continue its sessions until it has completed the work then pending before it, and is prepared to return the assessment books to the county clerk."

Seeking to overcome the effect of sections 315 and 316, the objectors contend, in substance, that these saving clauses were repealed, by implication, as a result of the 1943 amendment to section 107. Specifically, the objectors rely upon the familiar principle that the express enumeration of powers granted is an exclusion of powers not granted, (*Village of Lombard* v. *Illinois Bell Telephone Co.* 405 Ill. 209; *Arms* v. *City of Chicago,* 314 Ill. 316,) and argue that the express grant of power to county boards to extend the time boards of review may remain in session beyond the adjournment dates otherwise applicable is indicative of a legislative intent to exclude all other methods of extending the life of boards of review and to make adjournment dates mandatory. The argument advanced is not persuasive. The rule of construction that the enumera-

tion of certain things implies the exclusion of all others not mentioned is to be applied only when it appears to point to the legislative intent, and never to defeat the plainly indicated intent of the lawmaking body. (*Illinois Central Railroad Co.* v. *Franklin County,* 387 Ill. 301; *Patteson* v. *City of Peoria,* 386 Ill. 460.) Contrary to the view taken by objectors, the 1943 amendment, although a proviso in form, enlarges, rather than restricts, the powers of boards of review by permitting them to remain in session longer. An amendment authorizing limited extensions of adjournment dates of boards of review does not evidence an intention to render late assessments illegal where they were not illegal prior to the adoption of the amendment. Far from bespeaking a legislative intention that assessments not completed within the time required by law are illegal, the amendment in question merely discloses a legislative appreciation of the additional time required by boards of review in quadrennial assessment years and provides a simple method for authorizing compensation for a limited period of additional service without the necessity of obtaining an order of the Department of Revenue directing the board to convene in extraordinary session and authorizing the payment of compensation, under sections 140 and 144. Ill. Rev. Stat. 1947, chap. 120, pars. 621 and 625.

So construed, section 107, as amended, is not even mildly repugnant to sections 315 and 316. Repeals by implication are not favored and it is only where two laws are so clearly repugnant to each other and both cannot be carried into effect that the later will prevail. (*Krimmel* v. *Eielson,* 406 Ill. 202; *Wilhelm* v. *Industrial Com.* 399 Ill. 80.) In addition, from the very nature of sections 315 and 316 as saving clauses forming an integral and important part of our revenue laws for a period of many years, (Laws of 1871-72, p. 1, pars. 280 and 281,) it would appear that the legislature, had it intended to repeal these sections, would have expressly so provided. In view

of the foregoing, we hold that the 1943 amendment to section 107 did not repeal, by implication, sections 315 and 316. It follows, therefore, that these saving clauses are applicable here and the assessments in question, although not made within the time required by law, are as legal and valid as if they had been made within the time prescribed.

In the alternative, objectors contend that the horizontal increases are illegal because the notices of the proposed increases were fatally defective in that (1) no notice was given to the county supervisor of assessments, (2) neither the class of property nor the territory to be affected by the proposed change in assessment was specified in the notices and (3) the time between the mailing of the notices and the hearings was unreasonably short. Paragraph (5) of section 108, (Ill. Rev. Stat. 1947, chap. 120, par. 589,) authorizing boards of review to increase the entire assessment in any part of the county, does not prescribe the form or detailed contents of the notice to be given. It only provides that "the assessment of any class of property or of any township * * * shall not be increased until the board shall have notified not less than fifty of the owners of such property in such township * * * and given them, or anyone representing them or other citizens of said territory, an opportunity to be heard." Like notice, with an opportunity to be heard, must also be given to "the board of assessors, assessor or supervisor of assessments." In each case involved here, the board gave notice of a proposed increase in valuation to more than fifty property owners in the township and the township assessor eight days in advance of the hearing. Lake County does not have a board of assessors and, the township assessor and the county supervisor of assessments being referred to in the statute in the disjunctive, it follows that the notices to the township assessors were sufficient and that no notice was required to be given to the supervisor of assessments. Furthermore, the mailing of the notices eight days in ad-

vance of the hearings does not contravene any provision of the statute and, in the absence of any showing that the objectors were harmed thereby, it cannot be said the notice given was unreasonably short.

The remaining alleged defect in the notices involves a consideration of rule 17 of the Property Tax Division of the Department of Revenue. In 1947, rule 17 provided that notices of proposed equalizations of assessments shall be prepared on form No. BR-7. The notices were prepared on this form and, contrary to the assertion made, in each case, the appropriate township was properly designated as the territory to be affected by the proposed increase. The only item left blank in the notices was the specification of the class or classes of property involved in the proposed increases. As all persons receiving notices owned real estate and the increases proposed did, in fact, extend to all classes of real property, the failure to specify that the assessment of all classes of real property would be considered at the scheduled hearing does not constitute a material defect in the notices.

Objectors also contend that there is no record in the minutes of the board of review to support the horizontal increases and further complain that the county court erred in permitting the collector to amend the minute entry relative to the increase in Cuba township during the hearing on the objections. The minutes of the board of review substantiate the challenged increases, but it is apparent that each of the respective entries involved was written over an erasure. The minutes, although written over erasures, are, nonetheless, the official records of the board of review and it is significant that no contention is made that the minutes do not correctly reflect the action taken by the board. The specific objection made is that an altered document does not constitute evidence of what it purports to show without proof of its validity. Objectors are, however, in the anomalous position of having admitted by their

respective pleadings in the county court that the members of the board of review "caused to be entered upon the minutes of the Board of Review of Lake County a decision by them to make the following horizontal raises in valuation of all real estate in said township," thereafter describing the particular increases, and now denying that the record of the board supports the horizontal raises. Even more damaging is their failure to raise this contention in the county court, where the only objection to the minutes of the board was the assertion that there was no record of the jurisdictional proceedings preceding the horizontal increases. Under familiar principles, questions not raised nor adjudicated at the trial cannot be raised upon appeal. *Wise* v. *Potomac Nat. Bank,* 393 Ill. 357; *People ex rel. Tyler* v. *Chicago, Burlington and Quincy Railroad Co.* 281 Ill. 500.

The accompanying question as to the action of the trial judge in permitting the minute involving the increase in valuations in Cuba township to be amended in open court remains to be considered. As this minute appeared in the records of the board of review, it recited, in pertinent part: "Motion made and seconded * * *, that the Board apply the following equalization factors in Cuba Twp.: 60% on lots, 60% on improvement of lots, 60% on land improvements and 25% on lands." So written, the minute means that the assessments of the various classes of real property were to be decreased to amounts equal to 60 and 25 per cent, as applicable, of the assessments made by the township assessor. Since the corporate objector involved had, in its written objections, admitted that the board had ordered a horizontal increase in Cuba township and the chief clerk of the board testified to the same effect, the trial judge, on motion of the collector, permitted the minute to be amended by inserting the words "increase of" after "Cuba Twp.:" and by adding the notation, "Motion carried," at the end of the sentence. This was entirely proper,

as, under the liberal provisions of section 235 of the Revenue Act, (Ill. Rev. Stat. 1947, chap. 120, par. 716,) the court may, in its discretion, correct any irregularity or supply any omission of any officer connected with the assessment and levying of taxes which does not affect the substantial justice of the tax. *People ex rel. Pearsall* v. *Chicago, Milwaukee and St. Paul Railway Co.* 314 Ill. 378; *People ex rel. Knecht* v. *Payne,* 296 Ill. 236.

Next, the individual objectors in Warren township attack the order increasing their assessments upon the ground the increases were arbitrary and unreasonable, in that the valuations of lands were raised 25 per cent, and lots 100 per cent. According to these objectors, unsubdivided tracts and lots, all being land, must be treated uniformly. The short answer to this is that it was necessary to increase the values of tracts and lots by different percentages in order to make their assessed valuations uniform. Furthermore, section 20 of the Revenue Act, (Ill. Rev. Stat. 1947, chap. 120, par. 501,) providing for the valuation of real property, refers to tracts and lots, and subparagraph 5 of section 108, (Ill. Rev. Stat. 1947, chap. 120, par. 589,) in authorizing boards of review to increase an entire assessment of real property or an included class, does not impose any limitation upon the classification of real property. The classification of real estate into lands and lots being impliedly authorized by section 20 and not prohibited by section 108, and being reasonably necessary to equalize the assessment in Warren township, it cannot be said that the action of the county board in so classifying real estate was arbitrary or capricious.

The four remaining objections relate to the entire county tax and several levies included within the county tax. Objectors first contend that the entire county tax is illegal and void because the county board of supervisors did not levy the tax at the September session of the board as required by section 156 of the Revenue Act. (Ill. Rev.

Stat. 1947, chap. 120, par. 637.) The Counties Act provides that the annual meeting of the board of supervisors shall be held on the second Tuesday in September, a regular meeting shall be held on the second Monday in June, and all other meetings are special meetings to be held only upon the written request of at least one third of the members of the board. (Ill. Rev. Stat. 1947, chap. 34, pars. 50 and 51.) County boards having only those powers expressly given them by statute or as arise by necessary implication from the powers granted, a county tax levy not passed at the annual September meeting or at any adjourned session of the annual September meeting is void. (*People ex rel. Dooley* v. *New York, Chicago and St. Louis Railroad Co.* 368 Ill. 536.) A tax levied at the annual meeting or at any adjourned session thereof is legal and valid. (*People ex rel. Smith* v. *Wabash Railway Co.* 374 Ill. 165.) The record in the instant case discloses that the board of supervisors of Lake County met in annual session on September 9, 1947, and in adjourned annual sessions on September 16, October 14, and November 12, 1947, on which last date the county tax levy was passed. Although objectors assert that the meetings of October 14 and November 12, 1947, were held pursuant to a rule of the board of supervisors, adopted earlier in 1947, providing for monthly "regular annual adjourned meetings" on specific dates, including the dates in question, the record makes it abundantly clear that the meetings of October 14 and November 12 were not held pursuant to the rule but as adjourned sessions of the annual September meeting. The county tax, having been adopted at a proper adjournment of the annual meeting, was not illegal, and the county court did not err in overruling the objection made. *People ex rel. Smith* v. *Wabash Railroad Co.* 374 Ill. 165.

Objectors next contend that the levy for the Municipal Retirement Fund is void because the referendum held June 1, 1942, at which it was voted to bring the county under

the Municipal Retirement Fund Act, was illegal. The act then provided: "Election by any municipality to be included within the provisions of this Act, shall be made by referendum of the people at the first general or special election following the filing of a written petition of at least one (1%) percent of the legal voters * * *." (Ill. Rev. Stat. 1941, chap. 24, par. 1178(b).) The essential facts are that a petition was duly filed on April 1, 1942, and although a special judicial election was held on April 14, 1942, the referendum was not submitted to voters until the regular judicial election on June 1, 1942. According to objectors, as a result of the failure to hold the referendum on April 14, the petition filed April 1 became a nullity and, in the absence of a new petition, the referendum held in connection with the election of June 1 was illegal and void. On the other hand, the very idea of an election contemplates the giving of notice of the time, place and subject of the election, (*Roberts* v. *Eyman,* 304 Ill. 413,) and, in the absence of a provision for notice in the Municipal Retirement Fund Act, the provisions of the Election Code relating to special elections are applicable. (*Natt* v. *Suburban Cook County Tuberculosis Sanitarium Dist.* 407 Ill. 436.) Under the statute on elections, "except in cases otherwise provided for," notices of special elections are required to be posted in each precinct or election district at least twenty days prior to a special election. (Ill. Rev. Stat. 1941, chap. 46, par. 46.) Since a special election held without requisite statutory notice is void, (*People ex rel. Bulpitt* v. *Buesinger,* 324 Ill. 534,) no valid election could be held under the Municipal Retirement Fund Act until at least twenty days after the filing of the required petition. In view of this circumstance, the only workable construction of the statute involved is that the referendum shall be held at the earliest practicable general or special election following the filing of the petition, as manifestly the General Assembly did not intend to compel

void elections where the petition for a referendum is filed within twenty days of the next election. It follows, therefore, that the petition filed April 1, 1942, was not affected by the election of April 14, 1942, and constituted a good and sufficient basis for the referendum held in connection with the judicial election of June 1, 1942.

The seventh objection is that numerous items appearing in the tuberculosis sanitarium levy and in the general county levy are not sufficiently itemized. Section 156 of the Revenue Act provides that, when county taxes are for several purposes, "the amount for each purpose shall be stated separately." (Ill. Rev. Stat. 1947, chap. 120, par. 637.) By broad references to groups of items, generalized contentions and citing, but not discussing, only four cases, none of which have a direct bearing on the validity of any particular challenged item, objectors have managed to encompass an attack on twenty-one items in something less than two pages of their brief. Typical of the questioned items is one "for printing expense." An item in a county levy "for printing and publishing expense" has been held sufficiently definite without additional itemization. (*People ex rel. Yakel v. Toledo, St. Louis and Western Railroad Co.* 266 Ill. 112.) We have examined all the other items complained of and do not find that any are improperly or insufficiently itemized. Of these, only one, "for radio expense," merits particular mention here. Objectors merely complain that this item is too general, without showing in what respect the description is deficient. The instant levy was made under section 25.11 of the Counties Act. (Ill. Rev. Stat. 1947, chap. 34, par. 25.11.) Since section 25.11 authorizes counties to acquire and maintain a radio station and radio receiving sets "for police purposes only," the challenged item required no additional particularization.

Lastly, objectors contend that the levy for the tuberculosis sanitarium fund is excessive. This levy aggregated $276,500 and was extended at the rate of .055 per cent

of the assessed value of all taxable property in the county. The objectors assert that all the levy in excess of $175,000 is illegal. A levy of $175,000 would have resulted in a rate of .035 per cent in 1947. Section 2 of the County Tuberculosis Sanitariums Act, as amended in 1945, (Ill. Rev. Stat. 1945, chap. 34, par. 165,) provides that, in counties thereafter voting for the levy of a tax for the establishment and maintenance of a county tuberculosis sanitarium, the county board shall have the authority to levy a tax not to exceed .075 per cent. The amendment also affected counties which had voted to adopt the act when rates of one mill or one and one-half mills were in effect by automatically increasing these rates to .05 per cent and .075 per cent, respectively, and by permitting counties formerly having a one mill rate to increase their new rate of .05 per cent to .075 per cent by an election. While it appears ·that Lake County adopted the act prior to 1945, there is nothing in the record to show in what year the act was adopted and, consequently, not being able to ascertain whether the former rate was one mill or one and one-half mills, it is impossible to determine whether the existing maximum rate is .05 per cent or .075 per cent.

In the same connection, it should be observed that an election on the proposition of levying a tax to establish a sanitarium under section 2 of the County Tuberculosis Sanitariums Act does not authorize an increase in the maximum county rate set forth in section 25 of the Counties Act, it being settled that a county tuberculosis sanitarium tax cannot be levied in excess of the statutory county limit unless an increase in the county rate has been authorized by an election held under section 27 of the Counties Act. (Ill. Rev. Stat. 1945, chap. 34, pars. 25 and 27; *People ex rel. Goodman* v. *Wabash Railroad Co.* 395 Ill. 520; *People ex rel. Smith* v. *Wabash Railway Co.* 377 Ill. 68.) It follows that a levy for a tuberculosis sanitarium fund may also be excessive if it, when taken to-

gether with all other levies for county purposes, produces an aggregate county rate in excess of the maximum county rate. The foregoing are the only two ways a levy for the operation and maintenance of a tuberculosis sanitarium can be excessive.

Although the objectors assert that the levy of $276,500 is excessive, they do' not claim that it produced a county rate in excess of the maximum county rate nor do they contend that the levy resulted in a rate in excess of the maximum rate prescribed by section 2 of the County Tuberculosis Sanitariums Act. Indeed, they fail to show which of the two maximum rates authorized by section 2 is applicable. Instead, objectors rely upon a resolution of the county board, dated August 13, 1946, proposing an increase in the county rate and a subsequent election on November 5, 1946, at which the increase was adopted. The additional tax was for the purpose of operating the county tuberculosis sanitarium and the proposition voted upon provided the tax would be in effect for the years 1947 through 1956. Although the additional tax in excess of the statutory county rate was described in the resolution both as a tax at the rate of .075 per cent and, also, as a tax to produce $175,000 annually, it appeared on the official ballot only as a tax at the rate of .075 per cent.

Objectors contend that the specific amount stated in the resolution of the county board is controlling and that, consequently, the county board had no authority to adopt a levy for the tuberculosis sanitarium fund in excess of $175,000. In so arguing, objectors ignore the authorized statutory rates of .05 and .075 per cent and, in fact, seek to impose a rate limitation lower than the lowest rate established by section 2 of the County Tuberculosis Sanitariums Act. Although the purpose of the election of November 5, 1946, was to increase the maximum county rate, objectors do not contend that the challenged levy produced a county rate in excess of the statutory limit. While Lake

County may have had a maximum effective rate of .05 per cent and the election may have been held for the additional purpose of increasing the tuberculosis sanitarium rate to .075 per cent, the record is silent in this respect. It is equally deducible from the record made that the county board had authority to levy a tuberculosis sanitarium tax at a rate of .075 per cent, within the limits of the county rate, and that the election of November 5, 1946, was for the single purpose of authorizing an increase in the maximum county rate. In this event, an increase in the county rate, whether large or small, would have no effect upon an existing tuberculosis sanitarium rate of .075 per cent. In any event, it is clear that the election to increase the maximum county limit cannot have the effect of decreasing the statutory tuberculosis sanitarium rate, although this is the purport of the objection made here.

The burden of proof rested upon the objectors to show that the levy was invalid. (*People ex rel. McDonough* v. *Marshall Field & Co.* 355 Ill. 633; *People ex rel. Schrock* v. *First Nat. Bank,* 353 Ill. 447.) There being more than one statutory rate governing levies for the operation and maintenance of a county tuberculosis sanitarium, it was incumbent upon objectors to show that the levy exceeded the particular rate applicable. This they have failed to do. Since the challenged levy produced a rate of .055 per cent and there is no proof that the statutory rate of .075 per cent is not applicable here, it follows that the levy cannot be deemed excessive. The presumption is that the taxing officials properly discharged their duties and that the tax is lawful. *People ex rel. Wilson* v. *Wabash Railway Co.* 368 Ill. 497; *People ex rel. Schrock* v. *First Nat. Bank,* 353 Ill. 447.

For the reasons assigned, the judgments of the county court of Lake County are affirmed.

*Judgments affirmed.*